[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM ORDER RE: MOTION IN LIMINE TO EXCLUDE TESTIMONY OF KENNETH PIA AS TO DISGORGEMENT OF PROFITS
In support of its claim for damages in this case, the plaintiff has given notice of its intention to call Mr. Kenneth Pia as an expert witness. Mr. Pia has prepared, and the plaintiff has disclosed to the defendants, two studies describing his techniques for measuring such damages and calculations he made by using those techniques in this case.
One of Mr. Pia's studies was a so-called "disgorgement study."[1] In that study, Mr. Pia sought to determine the total profits earned by the Hartford office of defendant Dechert, Price Rhoads ("Dechert") from the day the office opened in March of 1996 through the end of 1999. P H intends to call Mr. Pia to testify as to the results of that study in support of its claim that Dechert should disgorge those profits to it due to Dechert's active role in conspiring with and aiding and abetting the individual defendants, former P H partners Richard D. Jones, Marc B. Friedman and Timothy J. Boyce (the "individual defendants") to breach their fiduciary duties to P H.
The theory underlying the plaintiff's claim for disgorgement of all the Hartford office's profits is that that office would never have been opened without the information, plans, personnel and other benefits Dechert acquired from P H by aiding and abetting the individual defendants to breach their fiduciary duties to P H pursuant to a conspiracy. According to P H, its evidence at trial will show that
 the treachery of the individual defendants was a substantial factor in both P H's loss, and in Dechert's gain. That is, by failing to disclose (and affirmatively misrepresenting) their intention to leave P H; by providing defendant Dechert with P H's business plans and financial and client CT Page 12240 information; by surreptitiously providing Dechert with confidential information about recruiting P H personnel; by actively looking for office space for Dechert while still partners at P H; and by undertaking a recruiting "blitz" of previously identified P H personnel within hours after Jones (but not Friedman or Boyce) had resigned from P H — and at a point when P H had no ability to effectively respond — the individual defendants provided Dechert with all the components needed to start a first class Finance/Real Estate practice group; and a base from which Dechert was then able to increase its share of the market. . . . From these findings, the jury can, and will, award damages based on . . . Mr. Pia's analysis of Dechert's ill-gotten gain.
Plaintiff's Post-Porter Hearing Memorandum (6/11/02), p. 31 n. 16.
Mr. Pia, of course, has no personal knowledge of any of the defendants' conduct leading up to Dechert's decision to open its Hartford office. Hence, he has been asked to assume, for the purposes of his testimony, that the individual defendants actually engaged in the above-described conduct, that Dechert conspired with them to do so with knowledge that they were thereby breaching their fiduciary duties, and that defendant Dechert later decided to open its Hartford office based upon what it learned as a result of these breaches of duty. Mr. Pia has determined, on the basis of those assumptions, that Dechert has realized a substantial profit as a result of the defendants' conspiracy to breach fiduciary duties.
The defendants have moved this Court in limine to exclude Mr. Pia's testimony under State v. Porter, 241 Conn. 57 (1997). In so doing they make three basic challenges to Mr. Pia's disgorgement study.
As a threshold matter, the defendants claim that P H's underlying theory of disgorgement is inconsistent with the law of disgorgement. According to the defendants, a non-fiduciary who aids and abets or conspires with a fiduciary to breach the fiduciary's duties to his beneficiary is liable to the beneficiaries for damages resulting from the breach of duty, but not to disgorge his own resulting profits, however illicit they may be. This Court has already rejected that argument, however, in its ruling on Dechert's objection to the plaintiff's request for leave to amend his complaint. In that ruling, the Court determined that disgorgement of profits can properly be sought from a third person CT Page 12241 who has taken confidential information from a fiduciary with notice that the information was acquired in violation of the fiduciary's duty to his beneficiary. This ruling was based on Section 201(2) of the Restatement of Restitution, which provides as follows:
 (2) where a fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which he makes through the use of such information.
On the basis of § 201, the Court permitted the amendment of the plaintiff's Substitute Complaint to include a claim for disgorgement of profits against Dechert, and will reject this aspect of the defendants' challenge to Mr. Pia's proffered testimony.
The defendants next argue that although Mr. Pia's method for calculating profits is commonly used and generally accepted by accountants and business analysts, its application is so flawed, and the conclusions it generates so irrelevant to the facts here at issue, as to warrant its exclusion.
Turning first to claimed flaws in Mr. Pia's application of his otherwise valid methodology to the financial data he assembled, the Court must first observe that such challenges ordinarily go only to the weight of scientific evidence, not to its admissibility. Only if the application is so fundamentally flawed as to mean that a wholly different method is actually being used can mere errors in application result in exclusion under Porter.
The "errors" pointed to here, if errors they are, concern Mr. Pia's use of normalized national salary figures for law firm personnel to calculate the compensation costs of Dechert in the 1997-1999 time frame. Dechert finds fault with this approach for several reasons. First, the national figures were lower than Dechert's own compensation figures. Hence, by using them Mr. Pia could show a larger profit than was in fact realized. Mr. Pia explained that he used national figures instead of the law firm's own figures because compensation figures sometimes include bonuses and other distributions which are really shared profits, not costs of basic compensation. This approach is not without its logic — and is surely not so off the mark as to transmute Mr. Pia's analysis into something different than he claimed he was doing. Dechert's criticism, moreover, can readily and effectively be brought out in cross-examination. If that is done, Mr. Pia can recalculate his numbers, CT Page 12242 if necessary.
Dechert also criticizes the part of the national database upon which Mr. Pia drew to obtain his data. In particular, the types of firms considered for comparison purposes seemed an eclectic mix, not all representative of firms of the size, scope and stature of Dechert. This criticism seems valid, and was not defended against persuasively in thePorter hearing. Even so, it goes merely to the weight of Mr. Pia's analysis, not to its admissibility, for it does not deprive that analysis of its underlying scientific validity.
The most significant challenge mounted by the defendants goes to the "fit" between Mr. Pia's analysis and the issues in this case — that is, its relevance to the issues the jury must decide. Mr. Pia's approach to disgorgement, claim the defendants, has an "all-or-nothing" quality to it. That is, the only theory of recovery to which Dechert's total Hartford profits could be relevant is one in which, as P H has unambiguously argued, it is assumed that all of Dechert's Hartford profits were somehow come at by exploitation of the primary illegality — the alleged conspiracy to breach fiduciary duties — and thus are attributable to and subject to disgorgement as a result of that illegality. That, claim the defendants, is very inappropriate because it affords no basis for determining what part of the Hartford office's profits truly resulted from the defendants' breaches of fiduciary duties. If clients were "stolen" from P H by Dechert or the individual defendants, it argues, then perhaps disgorgement of profits made by servicing those clients could lawfully be sought on the theory that they resulted from the breach. On the other hand, it claims, there is no justification for requiring disgorgement of profits earned in servicing other clients, whose coming to Dechert had nothing whatsoever to do with the alleged breach. Such other clients included new clients, clients who came to the Hartford office with non-P H lawyers who joined it, and Dechert clients from other Dechert offices who were sent to Hartford as overflow business. Mr. Pia's disgorgement study is irrelevant, claim the defendants, because it is devoid of any causal analysis showing the connection between particular profits and particular acts or types of misconduct by the defendants.
This criticism of Mr. Pia's analysis — or lack of analysis — of causation is certainly understandable, and may prove to be quite well taken if, by the end of the trial, the jury are not persuaded either that all of the misconduct here alleged actually occurred or that such misconduct was a substantial factor in causing all of Dechert's Hartford profits. In that event, without testimony to guide it as to what profits were generated as a result of particular acts of misconduct, the CT Page 12243 jurors may be left with no non-speculative way to determine what profits, if any, should be disgorged.
That, however, is the risk the plaintiff runs by presenting testimony on a single theory of causation and damages. The evidence will "fit" if the jury agrees with this theory. It will not "fit", however, and the plaintiff's case will suffer, if the plaintiff is less than fully successful in proving its claim.
In the Court's view, then, the disgorgement testimony of Mr. Pia is admissible under Porter, even though it may ultimately prove to be insufficient to sustain a valid, non-speculative disgorgement claim as a matter of law. Accordingly, this portion of the defendants' motion in limine to exclude the expert testimony of Mr. Pia must be DENIED.
It is so ORDERED this 26th day of September, 2002.
MICHAEL R. SHELDON, J.